Good morning, Your Honors. Thomas Roach, appearing on behalf of Plaintiff Appellant Rose Glass. Your Honor, we're here today because at the administrative hearing, the administrative law judge called a medical expert. The medical expert testified, the ALJ accepted the medical expert's testimony in his decision, and then the ALJ asked the vocational witness questions based on the medical expert's testimony, but did not include all of the limitations that the medical expert found. What was the main limitation that was not included? Was it the slowness? The slowness, Your Honor, and the fact that she would have to break her standing and walking into shorter segments is what the medical expert testified to. Now, Ms. Glass testified to what her, well, she didn't testify to it, but the forms that she filled out described her jobs. The vocational expert testified that her description of her jobs was consistent with the way the jobs were performed in the national economy and as recognized by the Dictionary of Occupational Titles. So, in other words, what she said that she did was consistent with the way the jobs were normally performed. Yet, those jobs, as they were normally them, would not accommodate somebody who could not move quickly or would not accommodate somebody who could not stand and walk for less than four, more than four hours if they were broken down into shorter segments. Counsel, what is the relief you're seeking? I mean, if we were, I mean, if we were to accept your arguments, would we reverse and remand for the ALJ to take into consideration these things that he didn't account for before? Your Honor, that is one of the options. I actually believe that because she, if these were accepted, she has established her burden of not being able to do her past work, and since there were no other jobs found that she could do, then she has effectively established disability, in which case this Court could reverse for payment of benefits. He never got to Step 5, where you'd have that kind of evaluation, right? That's correct, Your Honor. So wouldn't you have to go back to Step 5 if he took into account these other impairments? Well, Your Honor, I don't believe the Court is required to give him that opportunity. In other words, he had the opportunity to have alternatively found that there were other jobs that she could do. He just chose not to. So if these things were accepted, then the Court could reverse for payment. But if the Court was concerned and believed that he should have the opportunity to consider these limitations, then the proper thing would be to reverse and remand for further testimony, considering the limitations that Dr. Mason testified to. What is she doing now? Is she working now? No, she's still disabled, Your Honor. And how long ago was it that the ALJ issued its decision? Your Honor, you'll have to give me a second on that. It's been a number of years. It was February of 2002. So she still lives with her mother, and that's her only means of support. Now, tell me a little bit about her past type of work that the slowness and the breaks would make it so that she could not continue to perform that type of work. Certainly, Your Honor. Let's address the slowness first. She had worked as a health care provider in homes for disabled adults and disabled children, particularly mentally retarded adults and children and elderly adults. And she had testified that there were times when she would have to, quote, take down a patient or she would have to lift a patient or catch a patient who was falling or who had passed out. Obviously, this is not the situation where you would want somebody who moves so slowly that they're not going to be able to catch somebody that's falling or who is so large that they're not going to be able to bend over to help somebody who has fallen. This woman is 5 foot 8 inches tall and weighs 440 pounds. Even the largest of NFL linebackers don't weigh 440 pounds. How about the lifting aspect? Would her past work require, for example, to help a person get out of bed and into a wheelchair? Is that the kind of thing she does or not? It was, Your Honor, but even as she described it and as it's recognized in the DOT, that work was light. So in those circumstances, if she would have to actually lift somebody to put them in a wheelchair, they generally have assistive lifts where the person doing the work isn't actually bearing the entire weight of the person. Okay? So it wasn't the lifting aspect of it that was the problem with the respite care worker. It was the slowness of it. Now, the other job was the garage attendant cashier. And this was a job where she had to stand and walk more than 50 percent of the day. And the medical expert said that she probably wouldn't be able to do it more than four hours, and that was if it was broken into shorter segments. Well, in that job, you're not given the option to break your job into shorter segments. You have to stand and walk as the job requires it, not as you need it. So she didn't have the ability to do that job either. And by the very nature of the job, she wouldn't have done it. And so... I'm trying to picture that. Why is it the person has to stand and walk? Because they have to be there to take tickets, make change, things like that. This is a job that doesn't involve any significant lifting, but is categorized as light work because there is a significant amount of standing and walking. So she effectively would be on her feet all day. And obviously, according to Dr. Mason, who was the ALJ's witness, she didn't have the ability to do that. If there are no further questions, I'll reserve whatever time for rebuttal. All right. Thank you, Counsel. Good morning. May it please the Court. My name is John Cusker. I represent Joanne Barnhart, the aptly Commissioner of Social Security. The Commissioner's position in this case is based on substantial evidence that shows that the claimant can perform her past work and on the claimant's failure to meet her burden to show that she cannot perform such work. Is the past work that she can perform all of what she used to do or just part of this? The two specific jobs that were identified were the parking lot attendant and the group home attendant, the cashier parking lot attendant. The parking lot job actually encompassed duties as a cashier and duties as a traffic director. The traffic director part, what did she have to do for that? The claimant's description of what she had to do, it sounds as though the job involved events parking so that she would have, and indeed she testified that she had a certificate for this type of employment, that she would direct traffic from the pay area to where parking was supposed to go. But when she had to direct traffic, was she standing and walking? I think we could only assume that. That's, the claimant's descriptions of her past work is set forth in her vocational report, due as appellant's counsel stated, indicate percentages of times that she said she had to stand and walk. However, in the case of the parking lot attendant slash cashier job, she also stated the amount of time standing and walking reasonably inferred that, in fact, she did not have to stand and walk 75% of the time over an eight-hour day to perform this job. It is true that the job is classified as light in the Dictionary of Occupational Titles. But as the appendix supplemental excerpts that I submitted to the court indicate, light jobs may also be performed primarily seated. And it was the vocational expert's testimony that, given the ability to stand and walk four hours in an eight-hour day with breaks, that the claimant could perform this job. It seems that an unusual process that the ALJ followed to take the vocational expert testimony at Stage 4. It's not required. Well, I mean, usually that's Step 5, right? That is correct. At Step 5, if the medical vocational rules, the grid rules, do not apply, then vocational expert testimony is required. I would suggest that it's never required at Step 4, but it does happen from time to time that such testimony is offered. And in this case, the ALJ relied on the testimony. If the hypothetical was not complete, as the claimant says here, what do we do? What's the relief? He says we send it back down to grant benefits. So what do you say happens? If he wins at this stage, what do you do? Well, this Court has frequently, I wouldn't want to give percentages, but frequently found that when the vocational expert hasn't offered testimony at Step 5, that the appropriate remedy is a remand for a new hearing. But here, as you say, the vocational expert testified at Step 4, and he answered an incomplete hypothetical to come to the determination that she could perform her past residual function to perform her prior employment. And so that's unusual to be at this stage. So, I mean, I'm not, frankly, I'm not sure that we shouldn't just grant relief at this point, because, as you say, it wasn't required to go to Step 5. Well, this is the second point that supports our position, is that the claimant had the evidence shown that her past work was inconsistent with either the need to take breaks during that four-hour standing and walking period, or I should say, in addition, that the claimant has not shown that her ability to perform past work would be affected in any way by a slow pace. You know, we're talking law right now, but I just want to say kind of quickly, because it's common sense-wise, this woman weighs 450 pounds. Have you ever seen a 450-pound person? I mean, it just doesn't make common sense to say that she could go back and perform those jobs, weighing 450 pounds. I mean, if she were to lose this weight, maybe that would make a difference. But right now, that's what she weighs. That does make people slow. Indeed, it might. But the claimant hasn't shown that being slow would prevent her from being a cashier or from being a group home aide. Although opposing counsel suggests that it would, that's not in the record. We don't have substantial evidence showing that those jobs require one to have a fast pace. And, in fact, the claimant was as heavy well certainly was obese when she was performing these jobs. At least that is suggested by the record. Was that when she had the back and knee and joint problems that she has now? Well, the medical evidence begins with the work-related injury in 1997 when she was actually performing the more demanding job of respite worker, which is a medium occupation. And I would, excuse me, I suspect, but I cannot point to the record and say that the claimant had the impairments that she had at a later date. But, again, I would say that the claimant simply didn't meet her burden of showing that she was unable to perform these jobs. She had to show that she was not only unable to perform those jobs as generally performed in the national economy, that is defined in the DOT, but also as she previously performed. The vocational expert's testimony is unrebutted that the claimant could perform those jobs. There is no evidence showing that the claimant's pace, whether fast, slow, or otherwise, would affect her ability to perform those jobs. And given the medical expert's testimony that the claimant would need break, I think it's quite a stretch, breaks while standing and walking. I think that it's quite a stretch to assume that those would be more frequent than ordinary breaks, which is what the ALJ assumed in this case. What would the ordinary break be? It would be about once during the eight-hour shift, wouldn't it? Actually, I believe it's more frequent than that, and they're described in one of the Commissioner's more recent rulings. I think there's an assumption that breaks take place at two-hour intervals. They're relatively short breaks, but I believe that is the assumption. That's in, I believe it's in the ruling on sedentary work, which would be Social Security Ruling 96-9P, but I don't have that with me, Your Honor. So, again, to submit that it would be inappropriate for the court to remand for payment of benefits because of this burden of proof problem. And further, if that were, if the court found that there were grounds for remand, it would be most appropriate to remand for further proceedings. This claimant is a younger individual and has skilled How old is she? How old is she now? Well, she was in her 30s when the alleged workplace injury took place, and I believe Wait. There's no doubt the workplace injury took place. What do you mean alleged? I mean, there was substantial evidence that she had those injuries. She was 30 years old when the workplace, 30-something years old when the workplace injury took place. I believe she was 39 when she filed her application, 39 years old when she filed her application for benefits. So that would put her under age 50. So as a younger individual, there's a strong likelihood that there's quite a variety of work that she could do. She could perform sedentary jobs, even if nothing else has changed. There's also the possibility that, well, that's speculation. Yes. All right. Your time is up. So thank you very much, Counsel. Thank you, Your Honors. I think the real point here is being realistic. Okay? The claimant said that the jobs that she described were accepted by the vocational witness as being accurate as to the way they're performed in the national economy. So if she said she did this, the V.E. said, yes, that's the way it's done. So realistically, a person who has to do that job in the group home is somebody that's going to have to be able to move quickly. Is she moving slower now since she had her injury than before? Absolutely. Because she's found to have been very slow before. I mean, she did not. Absolutely. But in addition to the weight, she now has the injury, and the weight compounds the injury. And that's the reason that the ALJ is directed to consider how does the weight affect the medical impairment? And the weight significantly, and Dr. Mason testified to it. But there's also the hypertension, and that alone causes slowness. It does, Your Honor. Plus, as she comments, she says she hears her heart pounding in her head. That's clearly the hypertension. It slows her down. It keeps her awake at night, which, of course, is then going to slow her down in the day. But realistically, anybody who has to break their day, their standing and walking into shorter segments, is not going to be able to do the parking and the cashier job, particularly at the special events parking. Okay? You're going to be all over the parking lot directing people here and there and where to park, and you're going to be moving as you do it. Okay? You're not going to be able to say, okay, that's it. My segment is up. I need to get some relief or sit down or lay down. Realistically, that's just not allowed for in that job. Did one of the doctors say how often she needed to have the breaks, or is it just saying oftentimes or periodically? Dr. Mason specifically said that it would have to be in shorter segments. Well, exactly. Shorter presumes shorter than regular, shorter than normal. And as counsel pointed out, normal, the accepted breaks normally in a workday are after a two-hour period of time. So something that's a shorter segment would have to be obviously less than two hours. And if she can't stand and walk for two hours, then she can't do that job. It's just realistic. Thank you. Thank you, counsel. Glass v. Finehart is submitted, and we'll take up Tran v. Lamarck.
judges: Hug, Wardlaw, Siler